NEBRASKA NATIONAL BANK ET AL. V. GEORGE BURKE & FRAZIER.

FILED MARCH 5, 1895.   No. 6445.

1. **Evidence**: CONVERSATIONS BY TELEPHONE.   The admission of a party sought to be charged, that, at a certain time, he had had a conversation in given terms by telephone, renders immaterial the objection that independently of such admission there was no direct evidence of the scope of such conversation.

2. **Instructions.**   It is not required that each instruction shall state the different theories upon which the liability of the defendant may depend.   If by one instruction is described one ground of liability, and by another instruction there is set forth another reason for defendant's liability, there exists no good reason why these distinct predicates should of necessity be mentioned in the same instruction.

ERROR from the district court of Douglas county.   Tried below before FERGUSON, J.

*Chas. Offutt,* for plaintiffs in error.

*Hall & McCulloch, contra.*

RYAN, C.

This action was instituted in the district court of Douglas county by George Burke & Frazier, a copartnership, against the Nebraska National Bank of Beatrice and Lillie May Sigman, to recover the sum of $1,000, with interest

thereon from June 5, 1890. It is not disputed that in June, 1890, Mr. Sigman, the husband of Lillie, deposited to his credit and had cashed by the Nebraska National Bank of Beatrice two drafts which he drew on George Burke & Frazier through said bank, one for $1,000 the other for $600. These drafts were forwarded by the Nebraska National Bank of Beatrice through the regular commercial channels for presentation to George Burke & Frazier and collection from them. These drafts were accepted when presented, and at the expiration of three days' grace they were paid.

George Burke & Frazier, in this action, sought to recover the amount of the money thus paid to the bank, on the allegations that when the drafts were presented to them they telephoned to Beatrice to the said Nebraska National Bank to inquire whether the cattle would be shipped to meet the drafts, and being informed by the said bank that the cattle would be shipped to meet the drafts, the said George Burke & Frazier accepted the same; that Lillie May Sigman had entrusted to the Nebraska National Bank certain blank drafts to which her signature had been attached, to be filled out and used whenever shipments would be made by her, and that said bank drew upon plaintiffs by using two of the above described blank drafts. Plaintiffs alleged further that afterwards said cattle were diverted to Chicago and marketed there, and were not shipped to plaintiffs as the said bank agreed. They further charged that when the drafts became due, at the end of the days of grace, the cattle not having been received, they again telephoned to said bank at Beatrice, and were informed by it that they might draw for the money and that the bank would pay the same; and that thereupon they did draw upon Sigman for the amount of the money so fraudulently held back by said bank, and payment of said draft was refused. The Nebraska National Bank of Beatrice denied that any such agreements were made between and it

George Burke & Frazier. The case was tried to a jury and a verdict rendered in behalf of George Burke & Frazier for the amount of the two drafts with interest. A motion for a new trial was overruled and a judgment entered upon the verdict. The case is now here on error to reverse this judgment upon two grounds, to-wit:

"1. Incompetent evidence was admitted in behalf of George Burke & Frazier, and against the objection of the bank.

"2. The instructions of the trial court were erroneous and contradictory."

1. The incompetent evidence complained of was given by George Burke, a member of the firm of George Burke & Frazier. His testimony was descriptive of a conversation which he said his firm, on June 5, 1890, had with the cashier of the bank at Beatrice by telephone between the place of business of the bank and South Omaha, the place of business of plaintiffs. The material part of this conversation was as follows:

Q. What communication did you have with them?

A. We asked them what the drafts were drawn for, and they answered that they were drawn on some stock that would be shipped in a day or so.

Q. What, if anything, further was said?

A. We asked them if they would guaranty the shipment of stock, and they said they would.

Q. After this communication, then, what, if anything, was done by you?

A. We paid the drafts, or accepted them, as they show.

Q. After those drafts were accepted on that date, when, if at all, were they presented for payment?

A. They were presented on the 7th.

Q. At that time had the stock arrived?

A. It had not.

Q. Did you then have any further communication with the Nebraska National Bank of Beatrice?

A. We did.   We called them up.

Q. In what way?

A. By telephone.

Q. You may state what that communication was.

A. We called them up by telephone, and told them that the stock had not arrived to meet that draft.   They informed us that the stock had been shipped to Chicago, and that we should draw through their bank on Sigman for the amount of these drafts, and that it would be paid.

Q. Did you draw a draft pursuant to the instructions that you received from this bank?

A. We did.

Q. You may tell the jury whether or not that draft was paid.

A. It was not.

There was afterward developed by cross-examination of Mr. Burke the fact that he, in person, did not carry on the above conversation on behalf of the firm of which he was a member, but that this was done by Mr. Harris, who, at the telephone as the conversation progressed, reported the same to Mr. Burke.   On the ground that the testimony of Mr. Burke was but hearsay there was a motion to exclude it.   This was not passed upon until after there had been evidence given by Mr. Burke that at a time subsequent to June 5, aforesaid, he had had a conversation with the cashier of the bank at Beatrice, by whom it was admitted that with some one representing George Burke & Frazier he, the said cashier, at the time above indicated, had had a conversation, the language of which was substantially the same as that above detailed.   Mr. Burke's testimony was to some extent confirmed by that of R. S. Hall, Esq., who was present at the time the last mentioned conversation took place. This being the condition of the proofs at the time the motion to exclude was overruled, it is manifest that it would have been error to have excluded Mr. Burke's version of the conversation which had been had over the telephone,

for his knowledge thereof acquired by admission of the cashier was not based upon mere hearsay.

2. It is insisted that between instruction No. 4 given by the court on its own motion and instruction No. 4 given at the request of the bank there was an irreconcilable inconsistency. These, given in the order in which they have just been referred to, were as follows:

"4. I instruct you that if you find from the evidence that the plaintiffs did, on June 5, 1890, accept the two drafts sued on without being at the time informed by the defendant bank that cattle would be shipped to meet said drafts to plaintiffs, and relying thereon, that if you so find from the evidence, the plaintiffs cannot recover in this action against the bank. If, on the other hand, you find from the evidence that on June 5, 1890, at the time plaintiffs accepted the two drafts in question, the defendant bank had informed said plaintiffs by telephone that cattle would be shipped to meet said drafts, and that plaintiffs relied on said information, and by reason thereof accepted said drafts, and you further find that said cattle were not shipped and that plaintiffs paid said drafts upon said acceptance, then, if you so find from the evidence, the plaintiffs would be entitled to recover in this case from said bank."

The instruction asked on behalf of George Burke & Frazier was as follows:

"4. The jury are instructed that if they believe from the evidence that the money represented in the two drafts paid by Burke & Frazier was first furnished by the defendant bank to Sigman to buy cattle and then drawn for by said bank on Burke & Frazier and paid by them to said bank, and you further believe from the evidence that it was the intention of Sigman that the cattle so purchased should be shipped to the said Burke & Frazier to meet said drafts, and that said bank so understood at the time it drew said drafts, and you further find that said cattle were afterward diverted to Chicago with the knowledge of said bank, and

said bank again received the money so advanced by it out of the proceeds of the sale in Chicago, said bank would be liable for the money so obtained from Burke & Frazier, and your verdict, if you find as above stated, should be for the plaintiffs for the amount of said drafts, with interest at seven per cent per annum from June 7, 1890."

In the first of these instructions the ground of liability of the bank was predicated upon its false representation acted upon, that Mr. Sigman would ship certain cattle to Burke & Frazier as an inducement to said firm to accept the drafts which form the subject-matter of this action. In the second instruction the ground of liability was the receipt and retention of funds furnished by Burke & Frazier to pay for the stock expected to be shipped to that firm in South Omaha as the bank knew, and the acquiescence of the bank in such shipment being afterwards made to Chicago and its receipt and retention of the proceeds of the sale there made. These grounds upon which the defendant bank might be held liable were distinct it is true, but each was consistent with the other and either presented a sufficient reason for holding the bank liable. There existed no reason for mingling these independent grounds of liability in the same instruction. The judgment of the district court is

AFFIRMED.